CUMBERLAND D. HOLLINS, OF ROB'T, AND CUMBERLAND D. HOLLINS, OF JOHN, *vs.* DANIEL COONAN.—DANIEL COONAN *vs.* CUMBERLAND D. HOLLINS, OF ROB'T, AND CUMBERLAND D. HOLLINS, OF JNO.—*June* 1850.

Where two clauses in a will operate upon on the same property, giving it to different devisees, the subsequent clause operates as an abrogation of the former, and the devisee, under such subsequent clause, takes the whole.

CROSS APPEALS from *Baltimore* county court.

This was an action of *assumpsit*, instituted by *Cumberland D. Hollins of Rob't*, and *Cumberland D. Hollins of Jno.*, against *Daniel Coonan*, for money alleged to be due to the plaintiffs, for the use and occupation of a certain dwelling house, particularly described in the proceedings. The defendant pleaded *non-assumpsit*.

The plaintiffs, at the trial, offered in evidence a duly authenticated copy of the last will and testament of *Cumberland Dugan*, by which the testator disposes of a very large real and personal estate to various legatees. The particular sections of this will having reference to the controversy in this case, are the following:

V. *Item.*—I give, devise and bequeath to my said wife, *Margaret Dugan*, for and during her natural life, all those four three-story houses adjoining each other, situated at, and on the south-west corner of *Market Space*, often called *Cumberland Row*, and *Water* street, the one on the corner fronting about twenty-five feet, on the space or row, the other three fronting on the south side of *Water* street.

XVI. *Item.*—I give, devise and bequeath to my son *Hammond Dugan*, his heirs and assigns, the three-story brick house and lot situate on *Market Space*, commonly called *Cumberland Row*, it being the second house in said row, that is the reversion of the same after the death of his mother.

XXIV. *Item.*—I also devise to my son *Frederick James Dugan*, the reversion in fee-simple, after the death of my wife, who is to enjoy the rents, issues and profits of the same during her natural life, the house and lot designated by the number four, (No. 4,) situate on *Market Space*, on the west side thereof and on the north side, and adjoining the property of the late *Robert Stewart*, the same being about twenty-five feet front, by about sixty-five feet deep.

XXV. *Item.*—I give, devise and bequeath to my son *Frederick James Dugan*, his heirs and assigns, in trust for the use hereinafter mentioned, the following property, that is to say, *my three-story brick house and the lot situate on*

*Market Space or Cumberland Row,* after the death of his mother, *the same being the third house in said row, from the corner south of Water street, and on the south side of the house devised to his brother Hammond, the said lot being about twenty-five feet front, and sixty-five feet deep,* in trust for the use of *Cumberland Dugan,* the eldest son of the said *Frederick James Dugan,* to be conveyed to the said *Cumberland Dugan,* in fee-simple, on his attaining the age of twenty-one years. But during the period that shall elapse between the decease of my wife, and the arrival at said age of the said *Cumberland Dugan,* it is my will that my said son *Frederick James Dugan,* his executors, administrators or assigns, shall take and receive all and singular the rents, issues and profits of the said house and lot, to his own absolute use. And if my grandson should die before he attains the age of twenty-one years, I then devise the said house and lot, with all the intervening profits, if any, to my said son *Frederick James Dugan,* forever.

XXVIII. *Item.*—I give, devise and bequeath to my friend *Isaac McKim,* his heirs and assigns, the following property, *in trust* for my grand-children hereinafter named, as follows, that is to say: my three-story brick house, and the lot on the west side of *Market Space,* or *Cumberland Row,* in the city of *Baltimore,* situate about thirty feet north of *Pratt* street, and between *Baltzer Schoffer's* and *George Kaylor's* lots, it being a front of about twenty-seven feet on the said row, and extending westwardly for depth about sixty-five feet, and also the lot of ground in the rear of said lot, purchased by me from the late *John O. Donnell,* and also, *one other three-story brick house and the lot on the said row or space adjoining the property hereinbefore devised to my son Frederick, the said lot being about twenty-five feet front, and sixty-five feet deep,* which three several pieces of property, I hereby devise to the use of my two grandsons, namely, *Cumberland Dugan Hollins,* son of my daughter *Cordelia Margaret,* and *Cumberland Dugan Hollins,* the son of my daughter *Rebecca,* their heirs and assigns as tenants in common, to be conveyed to

them by my said trustee, when they respectively attain the age of twenty-one years, and in the meantime in trust to pay over the rents, issues and profits of the same to my wife, during her natural life, if she should live so long, and on the event of her death before my said grand-children attain to the age of twenty-one years respectively, then to pay over the rents, issues and profits thereof to my daughters *Rebecca Hollins* and *Cordelia Margaret Hollins*, equally. And in further trust, to convey the same in fee-simple, should my said grandsons, or either of them die before the said age of twenty-one, that is one moiety to the use of my daughter *Cordelia Margaret*, in fee, if her son dies before the said age, and the other moiety to the use of my daughter *Rebecca*, if her said son should die before he attains to the said age.

The last and residuary clause is as follows:

XXXII. Lastly, all my lands in *Baltimore* county or elsewhere, all my bank, road, insurance or other stocks, (except my *Baltimore and Ohio Rail Road* stock,) all my notes, bonds, mortgages, accounts or other evidences of debts or claims belonging to me. Also my wharf, commonly called "*Dugan's* wharf," extending from the south side of *Dugan's* street, and running north to *Pratt* street. Also, one-half of my said wharf at the head of *Pratt* street, with all and singular my claims, rights and demands for damages appertaining to the same. Also, the reversion of the ten annual ground rents on *Dugan's* wharf, of about nine hundred dollars per annum, after the death of my wife. Also, all the ground rents out of which the said rents issue. Also, all the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath to my four children, namely, *Rebecca Hollins*, *Cordelia Margaret Hollins*, *Hammond Dugan* and *Frederick James Dugan*, in the manner following, that is to say: one-fourth part of the said entire residue, I devise to my said trustee, *Isaac McKim*, his heirs and assigns, in trust for the sole and separate use of my daughter *Rebecca Hollins;* one-fourth to my said trustee in fee, for the use of my daughter *Cordelia Margaret Hollins*, the said two parts to be subject to

9     v.9

the same limitations, uses and trusts, as are heretofore declared in respect to the other property devised to my said trustee in trust for my said daughters; and the remaining one-half of the residue of my estate, I devise to my sons *Hammond Dugan,* and *Frederick James Dugan,* to them forever, to be equally divided, share and share alike.

It was admitted by the parties that this suit was instituted for the purpose of trying the title to the house and lot in the possession of the defendant as tenant of the testator, and of which said testator died seized, that one quarter's rent was due thereon; and that said house and lot is a three story brick house, and the lot on the west side of *Market Space,* in the city of *Baltimore,* and that it is the third house and lot south of *Water* street, and the third house and lot in *Cumberland Row,* marked No. 3, in the following plot, being a copy of a portion of the plat filed with the original record:

ORIGINAL PLAT.

It was further admitted that before the institution of this suit, and the accrual of the rent sued for, the plaintiffs, (who are the *cetuis que trusts* mentioned in the 28th clause of the will, under which clause they claim the whole house and lot in controversy,) and each of them had attained the age of twenty-one years, and had received a deed from *John Spear Smith,* (who was regularly appointed by the chancellor trustee in the place of *Isaac McKim,* mentioned in the will, who declined to accept said trust, for the house and lot in question, under their construction of the will. But the sufficiency of said deed to give them the title, was not admitted.

Upon this evidence and agreement, the plaintiffs prayed the court's opinion to the jury, that if they find the facts admitted, the plaintiffs are entitled to recover. But the court (Archer, C. J.,) refused to grant said prayer, and the plaintiffs excepted.

The defendants then prayed the court to instruct the jury that according to the true construction of the will of *Cumberland Dugan,* offered in evidence, the plaintiffs are not entitled to recover in this suit. But the court refused to grant said prayer, and the defendants excepted.

But the court instructed the jury that by the true construction of the will of the said *Cumberland Dugan,* the plaintiffs were each entitled to one-third part and no more, of the house and lot in the possession of the defendant, and of the rent payable therefor by him, the said house and lot being situate in *Cumberland Row,* in the city of *Baltimore,* on the west side of *Market Space,* and being the third house south of *Water* street. To which instruction, the plaintiffs and defendant each excepted, and the verdict and judgment being for plaintiffs, each appealed to this court.

The cause was argued before Dorsey, C. J., Chambers, Spence, Martin and Frick, J.

J. M. Campbell for the plaintiffs below, contended that the devise to them in the *latter* part of the will, being repugnant to the devise to *Frederick J. Dugan,* in the *earlier* part of it, must prevail over the one which precedes it.

T. P. Scott for the defendant below, insisted that the court erred in refusing defendant's prayer, and in giving the instruction which was given, for these reasons:

1st. Because there is no *direct* revocation of the devise in the 25th section of the will; and the description of the property in the 28th sec., is too vague, indefinite and uncertain, to operate as a *constructive* revocation of the devise in the 25th sec.

2nd. Because such an interpretation of the 28th sec. of the will, as would operate as an implied revocation in whole or in part of the 25th sec., would be a construction of the will in violation of the *general* intent of the testator to provide for all three of his grand-sons named after him, as well as of the *particular* intent to provide for *Cumberland Dugan*, of *Frederick*, as declared in the 25th section of the will.

3rd. Because by a different construction of the said 28th sec. of the will, viz: by substituting the name of "*Hammond*," for the name of "*Frederick*," in the description of the boundaries of the property intended to be devised by that section, effect will be given to every section of and devise in the said will, and will be consistent with the general intent of the testator without violating any special intent.

4th. Because if the 28th sec. of the will does in any degree change or revoke the devise in the 25th sec., it is only to the extent of a moiety of the property so devised.

The court, (Chambers, J., dissenting,) upon the record and plat then before them, decided that the word "*Frederick*," in the 28th section of the will, should be stricken out, and the word "*Hammond*" inserted, making that section read as if the testator had devised to *J. McKim*, in trust for the *cestuis que uses* therein named, his "three-story brick house and lot on *Cumberland Row*, or *Market Space*, adjoining the property hereinbefore devised to his son '*Hammond*.'" This construction would make the house and lot on the corner marked No. 1, pass by the 28th sec., and was based chiefly upon the ground that there was a mistake made by the testator in the fifth section of his will, in describing the three houses therein mentioned, as fronting on "*Water* street," instead of *Cumberland Row*, the plat not showing that there were

Hollins *vs.* Coonan.—1850.

any houses fronting on *Water* street, except the one at the corner, marked No. 1. In conformity with this decision, an opinion was delivered by MARTIN, J., which was superseded by the one below, delivered by the same judge, and by his directions is not to be reported.

After this decision was made, a motion was entered for a re-argument of the cause, and the following plat filed, showing that there were three houses fronting on *Water* street, which were admitted to have been owned by the testator at his death, and erected by him before the execution of his will.

PLAT MARKED DC.

WATER STREET.

Three-story brick house. 13.6  
Three-story brick house. 13.6  
Three-story brick house. 13.6  
24.6

26  
No. 1.  
24.6

26  
No. 2.  
Devised to Hammond Dugan.  
24.6

26  
No. 3.  
In dispute.  
26  
24.6

No. 4.  
Devised to Frederick J. Dugan.  
26.6

65 Feet.

Lot sold by Dugan to Robert Stewart.  
36.6

65 Feet.

MARKET SPACE, OR CUMBERLAND ROW.

MARTIN, J., delivered the opinion of a majority of the court.

Since the opinion delivered in these cases by a majority of the court, a plat has been filed in the cause by the counsel for the defendant, marked CD, and admitted by both parties to be correct, from which it clearly appears, that the late *Cumberland Dugan* was the owner of three three-story houses, fronting on the south side of *Water* street. And it has been admitted by the counsel for the defendant, in his letter of the 22nd of March, 1850, filed in the cause, that these houses were erected by the testator prior to the execution of his will. Under such circumstances, it is impossible to contend, there was a misdescription of the property designated by the testator in the fifth clause of his will. The court, therefore, all concur in the opinion, that the testator is not to be considered as having committed a mistake in the 28th clause of his will, and that the 25th and 28th sections are to be construed as operating upon the same property.

The question, then, arises, whether the 28th clause is to be regarded as an abrogation of the 25th clause of this will, or do the devisees mentioned in the two clauses, take concurrently?

Upon this question there is a difference of opinion among the members of this court. Three of the judges being of opinion that the 28th clause operates as an abrogation of the 25th clause, and that the property in contest, is therefore devised by the 28th clause to the plaintiff's below. Two of the judges being of opinion, that the trustees named in the 25th and 28th clauses of the will, take concurrently, each trustee taking a moiety of the property in dispute, for his *cestui que use*.

This court is therefore of opinion, that the county court erred in refusing the plaintiff's prayers, in the instruction given by them to the jury, and were correct in rejecting the defendant's prayer.

It is proper to state before leaving the case, that the majority of the court, in determining that there was a mistake in the 28th clause of this will, (for the reasons stated in their opinion,) on the supposition that the testator had misdescribed the proper-

ty intended to be devised by the *fifth* clause, acted upon the record in its then imperfect condition.  It appeared from the plat, forming a part of the record as it then stood, that there were no houses on the south side of *Water* street; and with this plat before them, they thought it demonstrably clear from the terms of the will, that the property which the testator designed to give to his wife, for life, by the 5th clause, was the house at the corner of *Water* street and *Cumberland* row; and the three houses, Nos. 2, 3 & 4, on that row; that the testator meant, that the 5th, 16th, 24th & 25th sections of his will should operate upon the same property.

By the plat recently filed, designated as DC, and the admissions of the counsel, it is beyond controversy, that the testator was, at the date of the will, the proprietor of three three-story houses, fronting on the south side of *Water* street; and there is, of course, no room for the argument, that there was misdescription in the fifth clause.

In the case of *C. D. Hollins of Robert, and C. D. Hollins of John, vs. Daniel Coonan,* the judgment of the county court is reversed.  And in the case of *Daniel Coonan, vs. C. D. Hollins of Robert and C. D. Hollins of John,* the judgof the court below is affirmed.

JUDGMENT AFFIRMED.