Dugan *vs.* Hollins, *et al.*

(Decided March 10th, 1859.)

---

# CUMBERLAND DUGAN *vs.* CUMBERLAND DUGAN HOLLINS, AND OTHERS.

Where the Court of Appeals in a former decision has construed a *will*, in reference to the title to certain property, and the same will in reference to the same property, is brought up for construction upon the same questions, in another suit, the former decision will be adhered to, whether the judgment be technically an estoppel or not, unless there is *manifest error* therein.

APPEAL from the Circuit Court for Baltimore city.

The bill, in this case, was filed by the appellant against the appellees, on the 7th of July 1855.

The property in controversy in the case, is a certain house and lot in the city of Baltimore, and it is claimed by the appellant, under the *twenty-fifth* clause of the will of Cumberland Dugan, executed on the 5th of October 1832, and admitted to probate on the 4th of November 1836, and by the appellees under the *twenty-eighth* clause of the same will. The particular sections of this will having reference to this controversy, are the following:

"V. *Item.*—I give, devise and bequeath to my said wife, Margaret Dugan, for and during her natural life, all those four

three-story houses, adjoining each other, situate at and on the south-west corner of Market Space, often called Cumberland Row, and Water Street; the one on the corner fronting about twenty-five feet on the space or row, and the other three fronting on the south side of Water street.

"XVI. *Item.*—I give, devise and bequeath to my son, Hammond Dugan, his heirs and assigns, the three-story brick house and lot, situate on Market Space, commonly called Cumberland Row, it being the second house in said row, that is, the reversion of the same after the death of his mother.

"XXIV. *Item.*—I also devise to my said son, Frederick James Dugan, the reversion in fee-simple, after the death of my wife, who is to enjoy the rents, issues and profits of the same during her natural life, the house and lot designated by the number four, (No. 4,) situate on Market Space, on the west side thereof, and on the north side, and adjoining the property of the late Robert Stewart, the same being about twenty-five feet front by about sixty-five feet deep, and which is now occupied by Samuel Bickley, which said several pieces of property I devise to my said son, with my blessings and best wishes for his prosperity and happiness.

"XXV. *Item.*—I give, devise and bequeath to my said son, Frederick James Dugan, his heirs and assigns, in trust for the uses hereinafter mentioned, the following property, that is to say, *my three-story brick house and the lot, situate on Market Space, or Cumberland Row,* after the death of his mother, *the same being the third house in said row, from the corner south of Water street, and on the south side of the house devised to his brother Hammond, the same lot being about twenty-five feet front and sixty-five feet deep;* in trust for the use of Cumberland Dugan, the eldest son of the said Frederick James Dugan, to be conveyed to the said Cumberland Dugan, in fee-simple, on his attaining the age of twenty-one years. But during the period that shall elapse between the decease of my wife, and the arrival at said age of the said Cumberland Dugan, it is my will that my said son, Frederick James Dugan, his executors, administrators or assigns, shall take and receive, all and singular, the rents, issues and profits of the said house,

and lot, to his own absolute use, and if my said grandson should die before he attains the age of twenty-one years, I then devise the said house and lot, with all the intervening profits, if any, to my said son Frederick James Dugan, forever.

"X XVIII. *Item.*—I give, devise and bequeath to my friend Isaac McKim, his heirs and assigns, the following property, in trust for my grand-children hereafter named, as follows, that is to say, my three-story brick house and the lot on the west side of Market Space, or Cumberland Row, in the city of Baltimore, situate about thirty feet north of Pratt street, and between Baltzer Scheffer's and George Kaylor's lots, it being a front of about twenty-seven feet on the said row, and extending westwardly for depth about sixty-five feet. And also the lot of ground in the rear of said lot, purchased by me from the late John O'Donnell. *And also one other three-story brick house and the lot, on the said row or space, adjoining the property hereinbefore devised to my son Frederick, the said lot being about twenty-five feet front and sixty-five feet deep;* which several three pieces of property, I hereby devise to the use of my two grandsons, namely, Cumberland Dugan Hollins, son of my daughter Cordelia Margaret, and Cumberland Dugan Hollins, the son of my daughter Rebecca, their heirs and assigns, as tenants in common; to be conveyed to them by my said trustee when they respectively attain the age of twenty-one years; and in the mean time, in trust, to pay over the rents, issues and profits of the same, to my wife, during the term of her natural life, if she should live so long, and on the event of her death, before my said grand-children attain to the age of twenty-one years, respectively, then to pay over the rents, issues and profits thereof to my daughters Rebecca Hollins and Cordelia Margaret Hollins, equally. And in further trust to convey the same in fee-simple, should my said grandsons or either of them die before the said age of twenty-one, that is, one moiety to the use of my daughter Cordelia Margaret, in fee, if her said son should die before he attains to the said age, and the other moiety to the use of my daughter Rebecca, if her said son should die before he attains to the said age."

Dugan *vs.* Hollins, *et al.*

The last and residuary clause is as follows:

"XXXII. *Lastly.*—All my lands in Baltimore county, or elsewhere, all my bank, road, insurance or other stocks, (except my Baltimore and Ohio Rail Road stock,) all my notes, bonds, mortgages, accounts or other evidences of debts or claims, belonging to me, also my wharf, commonly called 'Dugan's wharf,' extending from the south side of Dugan's street, and running north to Pratt street, also one-half of my said wharf at the head of Pratt street, with all and singular my claims, rights and demands, for damages appertaining to the same; also the reversion of the ten annual ground rents on Dugan's wharf, of about nine hundred dollars per annum, after the death of my wife; also all the grounds out of which the said rents issue; also all the rest, residue and remainder, of my estate, real, personal and mixed, I give, devise and bequeath to my four children, namely, Rebecca Hollins, Cordelia Margaret Hollins, Hammond Dugan and Frederick James Dugan, in the manner following, that is to say: one fourth of the said residue I devise to my said trustee, Isaac McKim, his heirs and assigns, in trust, for the sole and separate use of my daughter Rebecca Hollins; one-fourth to my said trustee, in fee, for the use of my daughter Cordelia Margaret Hollins, the said two parts to be subject to the same limitations, uses and trusts, as are heretofore declared in respect to the other property devised to my said trustee, in trust, for my said daughters; and the remaining half of the said residue of my estate I devise to my sons Hammond Dugan and Frederick James Dugan, to them forever, to be equally divided, share and share alike. And finally, I declare this to be my last will and testament, fully expressing my wishes, without respect to any promises I may at any time have made, and without regard to any expectations that I may in any manner have created. And I do hereby constitute and appoint my beloved wife Margaret Dugan, executrix, my sons Hammond Dugan and Frederick James Dugan, and William McKim, who intermarried with my grand-daughter Margaret Hollins, executors of this my last will and testament."

The complainant is the son of Frederick James Dugan,

mentioned in the 25th clause of this will, and was born on the 27th of January 1830, and by his bill claims a conveyance of the property under that clause. The testator's widow, Margaret Dugan, died on the 18th of June 1852.

The defendants, Cumberland Dugan Hollins of Rebecca, and Cumberland Dugan Hollins of Cordelia, mentioned in the 28th clause of the will, oppose the relief prayed, and in their answers aver, that, in 1844, Daniel Coonan was in possession of the house and lot in dispute, as tenant, and a claim thereto having been set up for the complainant, under the said 25th clause, by Frederick James Dugan, his father and trustee, these defendants, in that year, brought an action of *assumpsit* in Baltimore county court, against Coonan, for a quarter's rent, which suit was docketed by consent, and was defended for the purpose of trying the title to said house and lot, by said Frederick James Dugan, trustee as aforesaid, through his counsel; that the case was, by appeal, brought to the Court of Appeals, and that court, after argument and full consideration, decided, that the said two clauses of this will operated upon the same property, and that the 28th clause abrogated the 25th clause, under which the complainant claims, and the defendants rely upon that suit and judgment as a conclusive bar to the complainant's claim.

The case of *Hollins vs. Coonan*, referred to in the answers, is reported in 9 *Gill*, 62, and in that case there was an admission, by which "it was admitted by the parties, that this suit was instituted for the purpose of trying the title to the house and lot in the possession of the defendant, as tenant of the testator," which house and lot are then described, and are the same as those claimed by the complainant in the present suit.

Coonan testified, that he has occupied the property in question, as tenant, ever since the year 1839 or 1840, that he is the person against whom said suit was brought for a quarter's rent thereof; that he was always in the habit of paying his rent punctually, but this rent was not paid because he got notice not to pay it—he thinks from Mr. Scott—but witness did not employ Mr. Scott to defend the suit, and did not pay him any fees to do so; that the rent during the pendency of the

20    v. 13.

suit was paid to Messrs. Campbell and Scott, counsel for the' respective parties, in the above mentioned case of *Hollins vs.· Coonan*.

By an agreement of counsel it was admitted, that the rent which accrued during the pendency of said suit, was paid to the respective counsel of the parties in that case, to await the· decision of the case, and, after its termination, the whole amount was paid over to the plaintiffs in the action.

The case having been submitted for a decree, without argu-· ment, the court (KREBS, J.) passed a decree dismissing the bill, stating, that "it appears that the question in dispute has already been decided by the Court of Appeals, whereby the clause of the will, under which the complainant claims, was held to be abrogated by a subsequent clause therein." From· this decree the complainant appealed.

The cause was argued before ECCLESTON, TUCK and BARTOL, J.

*A. W. Machen* and *John Nelson* for the appellant:

1st. The judgment in *Hollins vs. Coonan,* is clearly not an· *estoppel.* Frederick James Dugan was not the trustee for this complainant, for the purpose of protecting the property, but the mere *conduit* through which the title was to pass, *provided* the complainant attained the age of twenty-one, and, under this 25th clause of the will, he had himself an interest in the· rents and profits of the property. The former suit was an ac-· tion of *assumpsit* for *rent*, while this is a suit for the *inheri-· tance.* There is, therefore, neither identity of *subject matter* nor of *parties. Estoppels* are construed strictly, and there is no ground of authority or reason for saying, that the appellant is bound by a decision of a question not in issue on the record,· in an action to which he was not a party, and involving a sub-· ject matter in which he had no manner of interest. The *rents* for which the former suit was brought, belonged to Mrs. Du-· gan, and by a further express provision of the will, no part of them were, in any event, to enure to the complainant's own benefit, until he had attained the age of twenty-one years.·

Dugan *vs.* Hollins, *et al.*

The former suit then cannot be regarded as an *estoppel.*    4 *G. & J.,* 345, *Shafer vs. Stonebraker.*    15 *New Hamp.,* 9, *King vs. Chase.*    3 *East.,* 366, *Outram vs. Morewood.*    12 *Md. Rep.,* 550, *Beall vs. Pearre, Adm'r of Brown.*

2nd. As a judicial construction of the will, the opinion of the court in the former suit, though entitled to great respect, cannot be *conclusive* as against the appellant; for that would be to make an estoppel by indirection, when in law there is no estoppel.    The circumstances under which the opinion in *Hollins vs. Coonan* was delivered, especially as it was the opinion of but three judges out of the five who decided the case, and the other judge who decided the case below, differed in opinion with the three who pronounced that opinion, take away much from its authority.    It is always a matter of *discretion* for the court to say, whether they will or will not abide by a former decision.    The former Court of Appeals, in *Kettlewell vs. Stewart,* 8 *Gill,* 472, *reversed* their *own previous decision* in *Albert & wife, vs. Winn & Ross,* 7 *Gill,* 446, upon the important subject, of the validity of assignments for the benefit of creditors exacting releases.    The fact, that in this case an important principle of law is involved, and the expediency of reconsidering an arbitrary rule of construction, which, as long as it is suffered to stand, must defeat intention in a vast majority of cases, affords sufficient ground, it is submitted, for regarding the question as still open.    3 *How.,* 464, *Lane vs. Vick.*

3rd. As to the *merits of the case.* It is now well settled. 1st. That technical words are *prima facie* to be understood in their strict technical sense. 1 *Phillip's Ch. Rep.,* 533, *Morrall vs. Sutton.* 2nd. That the whole will is to be reconciled if possible; for an intention in the testator to be consistent with himself, is always to be assumed as a cardinal point in construction. 1 *Phillip's Ch. Rep.,* 537. 1 *Jarman on Wills,* 415. 3rd. Although where two provisions in a will are *totally irreconcilable,* so that they cannot possibly stand together, and there is nothing in the context or general scope of the will to lead to a different conclusion, the last shall prevail; yet if the same property is devised in separate parts of the will, to two

different persons, this is not to be considered as a case of *irreconcilable repugnancy*, but the devisees shall take concurrently. *Co. Litt.*, 21, *a. note* 4. 23 *a. note* 1. 112 *b.*, note by Mr. Hargrave. 1 *Jarman on Wills*, 417, and authorities there cited. 2 *Plowd.*, 541, *note*. *Preston's Shep. Touch.*, 451, in 31 *Law Lib.*, 318. 4 *Greenlf. Cruise Tit.*, 32, *ch.* 12, *sec.* 26, *note*. *Jenkins*, 96, *Case* 86. 3 *Atk.*, 493, *Ridout vs. Pain.* 23 *Amer. Jurist*, 277, 278, article by judge Metcalf. 13 *Mass.*, 535, *Shove vs. Dow.* 7 *Iredell's Eq. Rep.*, 265, 269, *Baird vs. Baird.* 1 *Phillip's Ch. Rep.*, 537, 545, 546.

Applying these rules to the present case, it is insisted; *first*, that the devise in the 25th clause is not interfered with by the 28th clause, because 1st, the description in the 28th clause taken literally, does not cover the same property devised in the 25th clause, but expressly goes outside of it; 2nd. *Falsa demonstratio non nocet;* and if we simply reject from the descriptive part of the 28th clause, the words which refer to the property before devised, a good and sufficient description is left, and the devise can take effect without conflicting with any of the other provisions of the will. 2 *De Gex, McNa. & Gor.*, 300, 313, *Hart vs. Tulk*, and same case in 19 *Eng. Law & Eq. Rep.*, 438; 2 *Hare*, 355 to 372, *Hilldersdon vs. Lowe;* 7 *G. & J.*, 227, 252, *Creswell vs. Lawson;* and *secondly*, that at all events the two trustees, Frederick James Dugan and Isaac McKim, took jointly, and that by consequence, the appellant is beneficially entitled to one moiety of the property in question. The *publication* of a will gives effect *uno flatu* to the *whole instrument*, and the devise of property to A, and a subsequent devise in the same will of the same property to B, is not a case of *repugnancy;* the estate given in these two clauses is the same, and the parties have one and the same interest therein.

*J. M. Campbell* and *Geo. Wm. Brown* for the appellees:

1st. The suit of *Hollins vs. Coonan*, was brought by an agreement between the parties in interest, to wit, Cumberland D. Hollins of Cordelia, and Cumberland D. Hollins of

Rebecca, and Frederick James Dugan, father and trustee of this complainant, and is conclusive, and an *estoppel* on all the parties to this suit, though for convenience, and by agreement, it was brought against Coonan, the tenant of the premises. The two suits are substantially between the same parties and those claiming under them. The former suit was defended by Mr. Scott, as counsel for the trustee, Frederick James Dugan, as his argument in the case clearly shows, and as the testimony of Coonan in the present case demonstrates. The trustee claimed the property, and it was an action *to try the title* thereto. The trustee was the only party who could come in and defend the title, and it was his duty to do so, and having done so, the judgment is binding upon those who are interested as *cestuis que trust*. 2 *Story's Eq.*, sec. 1275. 2 *Smith's Lead. Cases*, 581 to 589. 4 *G. & J.*, 414, *Charlotte Hall School vs. Greenwell*. 10 *G. & J.*, 443, *Matthews vs. Ward*. 11 *G. & J.*, 323, *Moale vs. Buchanan*. 12 *Md. Rep.*, 550, *Beall vs. Pearre, Adm'r of Brown*.

2nd. But even if that suit is not technically an *estoppel*, it is still conclusive on all the parties in this case, being a decision after full argument and careful consideration, with all the facts before them, of the Court of Appeals, upon the same will and the same point now brought into question, upon the same facts. Even in a suit between entirely different parties on a different will, that decision would be entirely conclusive on the point presented, because it settles an important question of testamentary law, which has become the law not only for this case but for all similar cases subsequently arising. 4 *Md. Rep.*, 138,166, *Hammond's Lessee vs. Inloes*. 6 *Md. Rep.*, 234, *Mitchell vs. Mitchell's Lessee*. 5 *Md. Rep.*, 487, 489, *Alexander vs. Worthington*. 5 *H. & J.*, 278, *Hammond vs. Ridgely*. 1 *Md. Rep.*, 13, *Milburn vs. The State*. 1 *East.*, 541, *Schumann vs. Weatherhead*. 6 *East.*, 512, *Liverpool Water Works Co. vs. Atkinson*.

3rd. But even if that case is not an estoppel, nor conclusive on the parties or on this court, and if its correctness should be still an open question, then the appellees insist, it should be reaffirmed by this court, as being in itself correct, and well

founded on established principles of law applicable to the con⸗struction of wills. The rule as laid down by *Lord Coke*, in *Co. Litt.*, 112, *b.*, is, "that in one will, where there be divers devises of one thing, the last devise taketh place: *cum duo inter se pugnantia reperiuntur in testamento, ultimum ratum est.*" See on this point also the following authorities: *Plowd,* 541. *Lovelass on Wills*, 293. 2 *Bl. Com.*, 381. 4 *Kent,* 535, *note. Cruise's Dig. Title Devise, ch.* 9, *secs.* 3, 7. 1 *Powell on Devises,* in 21 *Law Lib.,* 212. *Parson's on The Law of Wills,* 32. *Dwarris on Statutes,* 675. 2 *Taunt.,* 109, *Doe vs. Biggs.* 1 *Swanst.,* 163, *Galland vs. Leonard.* 2 *Atk.,* 374, *Ulrich vs. Litchfield.* 5 *Ves.,* 247, *Sims vs. Doughty.* 6 *Ves.,* 100, *Constantine vs. Constantine.* 18 *Ves.,* 421, *Wykham vs. Wykham.* 2 *Mylne & Keene,* 149, *Sherrat vs. Bentley.* 6 *Pet.,* 84, *Smith vs. Bell.* 22 *Maine,* 430, *Pickering vs. Langdon.* 4 *Mass.,* 215, *Dawes vs. Swan.* 2 *Metcalf,* 202, *Homer vs. Shelton.* 2 *Paige,* 122, *Covenhoven vs. Shuler.* 9 *Paige,* 107, *Parks vs. Parks.* 12 *Wend.,* 602, 665, *Bradstreet vs. Clarke.* 2 *Yeates,* 525, *Robinson vs. Martin.* 3 *Whart.,* 162, *Lewis's Estate.* 4 *McCord,* 151, *Pullen vs. Pullen.* 1 *Hill Ch. Rep.,* 367, *Fraser vs. Boone.* 2 *Stewart,* 170, *Moore vs. Dudley.* 5 *Ala.,* 143, *Stallsworth vs. Stallsworth.* 3 *Monroe,* 279, *Adie vs. Cornwell.*

ECCLESTON, J., delivered the opinion of this court.

This bill was filed by Cumberland Dugan, on the 7th of July 1855, claiming a conveyance of a house and lot alleged to have been devised to him by his grand-father, Cumberland Dugan, senior, subject to a life-estate therein for Margaret Dugan the widow of the testator; she having died in June 1852. The property claimed is described, in the bill, as a lot of ground of about twenty-five feet front by sixty-five feet deep, situate on the west side of Market Space, in the city of Baltimore, with the house thereon, the same being the third house and lot in Cumberland Row, counting southwardly from Water street, now Lombard street; and which by the twenty-fifth section or item of the will of the testator, was devised to

be conveyed to the complainant, when he should attain the age of twenty-one years.   The bill alleging him then to be of that age.

It is denied, that the complainant has any right to insist upon a conveyance of the property, or has any claim or title whatever to the house and lot.   For it is contended that they were, by the 28th section of said will, (and subsequent to the 25th,) devised in trust for the use of the defendants, Cumberland Dugan Hollins, son of Cordelia, and Cumberland Dugan Hollins, son of Rebecca, to be conveyed to them when they should respectively attain the age of twenty-one years, by Isaac McKim, the trustee named in the will.   But the said trustee having declined to act, the chancellor appointed in his place John Spear Smith, who, after the *cestui que trusts* became of age, executed to each of them a deed, for one undivided moiety of the said house and lot, in fee-simple.

The present defendants, Cumberland Dugan Hollins, son of Cordelia, and Cumberland Dugan Hollins, son of Rebecca, were the plaintiffs in the suit against Coonan, reported in 9 *Gill*, 62.   That case, *in form*, was an action of *assumpsit*, to recover rent for the house now in dispute, but in *reality* was designed to obtain a decision upon the title to the property, under the will of Cumberland Dugan, senior.   This is evident from the admission stated on page 66.

The case was decided upon the grounds, that the 25th and 28th sections of the will should be construed as operating upon the same property; that the 28th clause operated as an abrogation of the 25th clause, and therefore, the property in dispute was devised to the plaintiffs by the 28th clause or section.

It has been contended by the appellees' counsel, that the decision in 9 *Gill* must operate as an estoppel upon the claim of the complainant in this suit.   It is said, that although the complainant was a minor pending that suit, yet, in point of fact, he was represented in the contest, through his trustee; that T. P. Scott, Esq., who, on the record appeared as counsel for Coonan, never was employed by him, but was employed by the said trustee.   And, for the purpose of showing this to

be so, a printed argument of Mr. Scott, in that case, has been read, which commences thus: "In the argument which I had the honor to present orally to the court in this case, on behalf of Cumberland Dugan, of Frederick; (under the name of Daniel Coonan, the tenant of the property.")

As regards the effect or influence of the former decision upon the present case, it will be seen to be quite immaterial, whether it shall be considered as an estoppel, or as a decision by the court of last resort; giving an interpretation to the clauses in the will of Cumberland Dugan, Sen.; in relation to the same property now in dispute; and where the same question arises, which was before decided.

The former judges all concurred in the opinion; that the 25th and 28th clauses of the will were to be considered as operating upon the same property. And in this conclusion we fully coincide.

Upon the question, whether the 28th clause should be regarded as abrogating the 25th, or whether the devisees mentioned in the two clauses should take concurrently, the members of the court were divided. Three of them held, that the 25th clause was abrogated by the 28th, and, therefore, the property in contest, was devised by the latter clause to the plaintiffs below. The two other judges decided, that the trustees named in the two clauses took concurrently, "each trustee taking a moiety of the property in dispute for his *cestui que use.*"

The counsel for the present appellees insist, that the decision of the three judges was correct. But this is denied by the counsel for the appellant. They say:

"Although where two provisions of a will are totally irreconcilable, so that they cannot possibly stand together, and there is nothing in the context or general scope of the will to lead to a different conclusion, the last shall prevail; yet, if the same property is devised, in separate parts of the will, to two different persons, this is not to be considered as a case of irreconcilable repugnancy, but the devisees shall take concurrently."

In *Co. Litt.*, 112, *b.*, it is said by Littleton: "If a man at

divers times, makes divers testaments, and divers devises, &c., yet the last devise and will made by him shall stand and the others are void." Commenting upon this Lord Coke says: "Here, by, &c., is to be understood as well devises of chattels real or personal, as of freehold and inheritance; also, that in one will, where there be divers devises of one thing, the last devise taketh place. *Cum duo inter se pugnantia reperiuntur in testamento, ultimum ratum est.*" In note 1, on this subject, upon the same folio, appear the following remarks: "There is a great contrariety in the books, on the effect of two inconsistent devises in the same will. Some hold with Lord Coke, that the second devise revokes the first. *Plowd*, 541. 3 *Atk.*, 374. Others think, that both devises are void on account of the repugnancy. *Ow.*, 84. But the opinion supported by the greatest number of authorities is, that the two devisees shall take in moieties. The authorities for and against Lord Coke's opinion, are well collected and arranged, in a note in the English edition of *Plowden*, 541."

It is undoubtedly true, that the correctness of the doctrine of Lord Coke, has been advocated by those, whose legal learning entitles them to great respect. It is equally true, however, that the opinion, stated in the above note, as having been supported by the greatest number of authorities, has been adopted by very distinguished names.

The construction of wills is often attended with much difficulty, and perhaps there has rarely been more controversy or more conflict of authority, upon any subject, in relation to wills, or indeed in regard to any branch of the law, than that of which we have just been speaking.

The majority of the court decided, that the latter clause in the will abrogated the former. But the opinion does not state whether the decision was so made, simply because the two clauses gave the same property to different devisees, or, whether the court considered that the provisions in the will, rendered the two clauses so *irreconcilably inconsistent* as to prohibit the different devisees from taking concurrently, and, therefore, the last was a revocation of the first. The opinion merely

announced, that the 25th clause was abrogated by the 28th, and thereby the property in dispute was devised to the plaintiffs.

On the part of the appellant it has been said, the former decision was not given under such circumstances as can make it an estoppel upon him. As evidence of what the law is in such a case, the decision is conceded to be entitled to great respect. It is contended, however, that we are not prohibited from revising it, and if upon due consideration it is found to be erroneous, we not only may but ought to correct the error, by making a different decision in the present case.

In *Hammond's Lessee, vs. Inloes,* 4 *Md. Rep.,* 164, the counsel for the appellants urged the propriety of revising and overruling the opinions of our predecessors, upon titles similar to those which were then under examination; but, after the most mature consideration, the former decisions were adhered to. And there it is said: "If, as a general rule, upon principles of judicial propriety, and in view of the importance of having the law fixed and certain, a court respects its own decisions even in analogous cases, there would seem to be more reason for adhering to them where the facts are the same, though between different parties." There, it is true, the court concede, that cases have occurred, and may again occur, in which they would feel themselves bound to withhold their assent to adjudged cases. But it is evident, from the whole scope of the opinion, that the assent should only be withheld where the former decisions were *clearly erroneous.*

Now, if in the case in 9 *Gill,* the majority of the court erred at all, it was certainly upon a very doubtful question, to say the least of it. And we are not prepared to say, we are fully convinced there was such manifest error in the decision as should require us to overrule it. The same property, the same will, and the same questions, arising upon similar facts, which were presented in the former case, are also before us in this. We therefore think the following quotation, from *Hammond's Lessee vs. Inloes,* will constitute a very appropriate conclusion for us: "We have not been able to discover a sufficient reason for making this an exception to the almost uninterrupt-

ed practice of all courts, of receiving their own decisions as of binding force."

The decree below will be affirmed without costs in this court.

*Decree affirmed.*