[No. 900.  Decided January 22, 1894.]

## P. S. WILKES, *Appellant*, v. GRIFFITH DAVIES, *Respondent*.

SALE OF SCHOOL LANDS — RECOVERY OF VALUE OF IMPROVEMENTS — RES JUDICATA — JUDICIAL NOTICE.

Where school lands have been improved by a tenant, and the land afterward appraised by the county commissioners and offered for sale, no appraisement of the improvements having been made, the tenant is entitled to the value of his improvements upon the sale of the land, and may recover therefor, although still in possession. (HOYT, J., dissents.)

The decision of the supreme court construing a statute, whether proper or not, is the law of the case in another action between the same parties, upon the same subject matter.  (HOYT, J., dissents.)

Where the state of the pleadings is such that the plea of *res judicata* cannot be interposed, and there is no opportunity to raise the point on the introduction of evidence, the court may, where both causes are matters of record in the court, take judicial notice thereof.  (HOYT, J., dissents.)

*Appeal from Superior Court, King County.*

*W. S. Relfe,* for appellant.

*Fishback, Elder & Hardin,* for respondent.

The opinion of the court was delivered by

DUNBAR, C. J.—This was an action at law to recover the alleged value of improvements on school land.  The plaintiff alleged his possession of said lands by virtue of a lease from the county commissioners of King county; the appraisement of the land by the county commissioners, under the act to provide for the sale and leasing of school lands, approved March 28, 1890 (Laws 1889–90, p. 438), and all the subsequent steps taken by the commissioners under said law.  He alleged that the defendant Davies was the highest and best bidder for the land upon which

the plaintiff's improvements rested, and alleges that in appraising said lands the county commissioners of King county, although at the time having full knowledge and notice of the fact that plaintiff had improvements thereon and of their value, and that the plaintiff was the owner of said improvements and living thereon, arbitrarily and without just cause, failed and refused to appraise or value the improvements made by the plaintiff as aforesaid upon the land, and failed and refused to set down the value of said improvements upon the land so appraised, and to report the same as required by law. The complaint also alleged the value of the improvements and asked for judgment for that amount.

The complaint is a long one, but we think we have stated sufficient of it for the purposes of this decision. Upon the trial of the cause the defendant objected to the introduction of any testimony by the plaintiff, for the reason that the complaint did not state a cause of action. The court sustained the motion, and the plaintiff, standing on his complaint, appeals. So that the only question before the court is the sufficiency of the complaint.

The first and main contention for the respondent is, that the plaintiff being in possession of the improvements, not having delivered them to defendant, he could not recover their value from defendant. We cannot agree with this contention of respondent. We think the law accords to him, without any question or peradventure, the value of his improvements upon the sale of the land, and that he should not be compelled to yield up possession and depend upon a personal judgment, which might prove inadequate or entirely worthless. Neither do we think the law will compel him to remain upon the land awaiting the pleasure of the purchaser to take possession of the premises and the improvements.

There is another proposition in the case, however, that

8—8 WASH.

is vastly more troublesome, namely, whether or not the appellant is precluded by the action of the county commissioners in reporting no improvements upon the land, and what appellant's remedies and rights are under such circumstances, if he have any. Although the court entertains grave doubts upon these propositions, yet we think it is unnecessary to determine them in this case. Substantially this same case was before the court, and this statute (Gen. Stat., title 24, ch. 1) was construed, in *Wilkes v. Hunt, Griffith Davies, F. A. Twitchell and W. T. Forrest,* reported in 4 Wash. 100. In discussing the statute now under consideration, the court, in its opinion rendered in that case, said:

"To maintain injunction against anyone the plaintiff must make sure that he has not some other adequate remedy, and this is none the less the rule when an officer of the state is the person sought to be enjoined, and the object of the injunction is to prevent his performing a statutory duty. In this case the appellant shows that there was no appraisement of his improvements, and that, therefore, the purchasers from the state will take title to the land without paying him for their value, as the statute says he shall do within thirty days. Were we clear that such results would follow we should feel inclined to reverse the judgment, since it is plain that the intention of the statute is to reimburse persons situated as the appellant avers himself to be. But he seems to have not only one, but even two other remedies, either of which would save him harmless. In the first place, if there has been no compliance with the statute by the appraisement of his improvements, certainly no court would permit a purchaser under those circumstances to interfere with his possession of the land until he is compensated as the law requires. Secondly, the purchaser is required to pay the appraised value to the owner of the improvements; that is, he is the debtor of the owner to that amount, and must pay it within thirty days. He can be sued for the debt, and if there has been no appraisement, the court and a jury can fix the reasonable value as well as the commissioners. With such a wealth of reme-

dies at his hand we think the state should be permitted to proceed with its business without the hindrance of an injunction, and the judgment is, therefore, affirmed."

By reference to the record in the case of *Wilkes v. Hunt*, 4 Wash. 100 (29 Pac. 830), it will be seen that the parties in interest in that case were the identical parties in interest in this action, it being alleged in that action that Hunt was the agent for Davies, the defendant in the action at bar, in bidding in the land. That action was against both Hunt and Davies. It is true that the land commissioners were necessarily made parties defendant to the action, but it was equally true that they were not the parties in interest, and under the theory of the plaintiff in that action it was necessary that the commissioners should be made a vehicle to convey him into court to obtain an adjudication of his right with Hunt and Davies. That adjudication could only affect the parties in interest, namely, Wilkes on the one side and Hunt and Davies on the other. Afterwards Davies was substituted for Hunt as the purchaser, so that it will be seen that the parties to this suit were the parties to that.

The next question is, was the subject matter of the litigation the same. The object of the first action was to obtain the value of the improvements on the land by enjoining the sale until such improvements were paid for. The avowed object of this action is to obtain the value of the same improvements. The complaints in both actions are the same; the same state of facts is alleged, and by referring to appellant's brief in the former action, the respondent not appearing, it will be seen that the injunctive relief there sought was sought on the theory that no legal relief was available. We quote from appellant's argument, on page 23 of the brief:

"Since the title to the land would pass to the purchaser from the state by this contract and patent, if delivered, the plaintiff having only the right to be paid the appraised

value of his improvements, he could interpose no defense to an action by the purchaser to recover possession of the lands and improvements.  He could not recover the value of his improvements from the state, nor could he compel the purchaser to pay for them, for the reason that no valuation had been placed upon them by the commissioners. How then can he be protected except by injunction?''

So that it will be seen that the very question raised by the respondent in this case, namely, that the complaint did not state facts sufficient to constitute a cause of action, was before the court in that case, and one of the grounds alleged by the court for refusing the equitable relief asked for, was the ground that the plaintiff was entitled to the relief asked for in this action.  So that the question involved here was directly before the court and passed upon by the court in *Wilkes v. Hunt*, and the court in its opinion plainly states that the judgment in that case was based upon its construction of the statute on the questions raised in the case now before the court; and while it may be that the case might have been decided on some other ground, these questions were involved in the case, were considered and decided by this court, and such consideration and decision on these points, decided the former case.  So says this court in its opinion.  This was in no sense *obiter dictum*, but was the decision on one of the points involved in the case.

The plaintiff in this action, relying upon the rule laid down by the court, has brought himself squarely within it, and the decision of this court, whether right or wrong, must bind the parties to the action in which it was rendered, and becomes the law of the case.  Whether or not the judgment in the former case was *res adjudicata* so far as the public is concerned in the way of a precedent, it is not necessary to determine, for there is a well defined distinction between the doctrine of *res adjudicata* in that sense

and the doctrine of *res adjudicata* in its application exclusively to the parties to the action. The general rule is, that the judgment of a competent court is binding and conclusive upon the parties, and will not be reversed or reviewed by any court possessing concurrent jurisdiction. It is not only binding and conclusive as to all questions of law and fact that were made upon the first trial, but as to all questions of law and fact which, from the organization and powers of the court, might have been submitted. Wells on Res Adjudicata and Stare Decisis, § 424.

In *Davidson v. Dallas*, 15 Cal. 75, the court, in referring to a case which had been before it and had been decided at a previous trial, says:

"This view of the case is conclusive of this appeal. The same facts are brought before the court now as when the case was heard and decided here. The agreement was before the court between Dallas and Gilsen, and the effect of it was passed upon."

In *Thomason v. Dill*, 34 Ala. 175, it was decided that a decision of the supreme court is the law of the case in which it was announced, and is conclusive both in the primary court and on a second appeal; and by the supreme court of Indiana, in *Hawley, Administrator, v. Smith, Administrator*, 45 Ind. 183:

"When the supreme court has laid down a rule of law, it will adhere to it in a subsequent action between the same parties, where a different decision would leave one party without remedy, even though doubtful of the correctness of the rule when applied to other cases."

In *Stacy v. Vermont Central R. R. Co.*, 32 Vt. 551, the rule was announced that the supreme court would not revise a former decision made by the same court in the same cause and on substantially the same state of facts. Said the court:

"Upon carefully examining the original bill of exceptions that was then before the court, and comparing it

with the one now before us, we are wholly unable to discover in this case any fact material to its determination that was not contained in that.    The facts are stated with more particularity now than then, but substantially they are the same.    We find no such alteration of, or addition to, the facts, as calls for the application of any different rules of law from what the case then required.''

And so with the cases under consideration.    The complaints are substantially identical, and consequently call for the application of no different rules of law or modes of construction.    This rule is so obviously based upon the plainest principles of justice and fair dealing that it has been decided by the supreme court of the United States in *Washington Bridge Co. v. Stewart*, 3 How. 413, that after a case has been decided on its merits and remanded to the court below, and is again brought up on a second appeal, it is then too late to allege even that the court had no jurisdiction to try the first appeal; virtually holding as the law of the case a decision of a court without jurisdiction. This case has been followed by the appellate courts in many of the states.

In *Clary v. Hoagland*, 6 Cal. 685, it was decided that when a case has been once taken to an appellate court and its judgment obtained on the points of law involved, such judgment, however erroneous, becomes the law of the case; and that this rule applies not only to questions of law arising out of the case, but to questions of jurisdiction.    And while the case at bar was not brought here on appeal directly as a matter of record the second time, yet in fact and in effect it is here for all the purposes of the case exactly as though it were brought here on a second appeal.

*Dugan v. Hollins*, 13 Md. 149, is a case where the parties to the second action were not nominally the parties to the first action; but the same questions were adjudicated in both cases, and the same law points involved, just as in the

action at bar, and it is a case in point so far as parties to the action are concerned. There the court said:

"The present defendants . . . were the plaintiffs in the suit against Coonan, reported in 9 Gill, 62. That case, *in form*, was an action of *assumpsit*, to recover rent for the house now in dispute, but in *reality* was designed to obtain a decision upon the title to the property under the will of Cumberland Dugan, sr. This is evident from the admission stated on page 66."

Analogous to this, the case of *Wilkes v. Hunt* was in form an equitable proceeding, but it was in reality designed to obtain a construction of the statute in relation to the rights of owners of improvements on school land.

Quoting again from *Dugan v. Hollins*, the court said:

"As regards the effect or influence of the former decision upon the present case, it will be seen to be quite immaterial whether it shall be considered as an estoppel or as a decision by the court of last resort, giving an interpretation to the clauses in the will of Cumberland Dugan, sr., in relation to the same property now in dispute, and where the same question arises, which was before decided."

And so we say again that the decision in the case of *Wilkes v. Hunt* was an interpretation of the clauses in the statute with reference to improvements on school land, and in relation to the particular improvements now in dispute; and that the same questions arise in the case at bar which were before decided; and we again adopt the language of the court in that case and apply it to the case at bar when we say "the same property, the same statute and the same questions arising upon similar facts which were presented in the former case are also before us in this." We therefore think the following quotation from *Hammond's Lessee v. Inloes*, 4 Md. 138, would constitute a very appropriate closing for us:

"We have not been able to discover a sufficient reason for making this an exception to the almost uninterrupted

practice of all courts, of receiving their own decisions as of binding force."

In the appeal of Thomson and others in the case of *Winn v. Albert*, 15 Md. 268, the court decided that where the court of appeal has declared a deed of trust for the benefit of creditors to be void, that decision is the law of the case and must govern in all further proceedings in the same case, notwithstanding a different decision upon a similar deed may have been subsequently made by the court in another case. And this also was a case where the parties to the last action were not, in form, parties to the action in the former case.

Such also was the condition in the case of *Eugene Tuttle v. Orrin Garrett et al.*, 74 Ill. 444. The parties to the action, the decision of which was held to be *stare decisis*, were John G. Tuttle et al., plaintiff in error, *v.* Augustus O. Garrett, defendant in error; but the court held in the latter case that it was substantially the same case, and that the court was concluded by its decision in the former case.

The supreme court of the United States, in *Aurora City v. West*, 7 Wall. 82, lays down the rule as follows:

"Courts of justice, in stating the rule, do not always employ the same language; but where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented in that trial, the matter must be considered as having passed *in rem judicatum*, and the former judgment in such a case is conclusive between the parties. Except in special cases, the plea of *res judicata;* says TAYLOR, applies not only to points upon which the court was actually required to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."

And referring to *Packet Co. v. Sickles*, 24 How. 341, the court said:

"Attempt was made in that case, as in this, to maintain that the judgment in the first suit could not be held to be an estoppel, unless it was shown by the record that the very point in controversy was distinctly presented by an issue, and that it was explicitly found by the jury; but the court held otherwise."

It seems to us that this high authority is decisive of the case at bar, for if the contention of the respondent in this cause in regard to the construction of the statute is correct, it would have been a complete answer to the complaint in the former action. It is true that the plea of *res adjudicata* was not presented by the pleadings, nor was it offered in proof under the general issue, which are the two ordinary ways of bringing this question to the notice of the court.

But this case falls within the rule laid down by many courts where no opportunity to plead the former adjudication is presented. The plaintiff brought his action in accordance with his legal rights as pronounced by this court. He could not very well plead an estoppel in his complaint. The defendant answered, but his answer was a denial of the facts alleged in the complaint. No question of law was raised by the answer to render the plea of an estoppel necessary by reply. It denied that the plaintiff had the improvements which he alleged he had; denied that he lived on the land or that he was in possession of the land as averred in the complaint; denied that the lands were advertised for sale as alleged; denied that either the defendant or his assigns were claiming the right to take plaintiff's improvements without compensation; but averred that all the plaintiff's improvements had been duly and regularly appraised, and compensation made therefor in the sum of $600, and that plaintiff had accepted and received said sum.

There was much more to the same effect in the answer,

but it only put in issue questions of fact, and informed the plaintiff that these facts must be substantiated by proof. This court had not passed upon any question of fact in the case.    If it had, such decision could have been pleaded as *res adjudicata* to the answer.    But there was certainly no opportunity to plead *res adjudicata* of any decision of the court on the law involved.    Neither was there any opportunity to offer such a plea in evidence, even if it had been admissible to have done more than to have cited the court to the decision; for the case was really disposed of on demurrer, or a motion which was equivalent to a demurrer to the complaint; for after the jury was empaneled the defendant objected to the introduction of *any* evidence, on the ground that the complaint did not state facts sufficient to constitute a cause of action, and the plaintiff was deprived of the right to introduce evidence of any kind by the action of the court in sustaining the motion.    But, in any event, this objection was not raised here, and we will not raise it for the parties.    Both cases are matters of record in this court, and the court can take judicial notice of its own records.

But further it was made a direct issue by the brief of appellant in this court, and is the only matter which is discussed in the brief.    No objection was made in the respondent's answering brief to the consideration of this question, or in oral argument to its discussion.    In fact, it was claimed by respondent in his brief that the case of *Wilkes v. Hunt* was *res adjudicata*, to the effect that the plaintiff could not hold possession of the land and at the same time recover its value in a suit at law.    Both parties, therefore, conceded it to be *res adjudicata* and treated it as such, but placed different constructions upon the decision.

In consideration of the importance of this statute in its effect upon the public, and of the doubt that is at present in the minds of the court as to whether the construction

placed upon it in *Wilkes v. Hunt* was the proper construction, we will not pass upon that question now, nor consider ourselves bound by it in any independent cases; but having so construed the statute in a case in which the identical parties to this action were the parties in interest, and the identical property here involved was involved, so far as this case is concerned we feel ourselves bound by the decision therein rendered and by the opinion therein expressed; and on this ground the judgment will be reversed, and the case remanded to the lower court with instructions to proceed in accordance with this opinion.

STILES, SCOTT and ANDERS, JJ., concur.

HOYT, J. (*dissenting*).—I am unable to agree with the conclusions of the majority as stated in the foregoing opinion, and, as I deem the questions discussed therein of great importance, shall at some length state the reasons which induce me to dissent therefrom.

Such conclusions are founded entirely upon the alleged fact that what was said by this court in the case of *Wilkes v. Hunt* was conclusive of the rights of the parties in the case at bar.  If these conclusions had been put upon the ground that what was thus said had become a rule of decision for all cases presenting a similar state of facts, I should find little fault with the reasoning of the court in regard thereto.  But it clearly appears from the opinion that they were not at all founded upon such rule.  It appears from inferences to be drawn from the course of the discussion in the opinion, and also by express announcement therein, that what was said in that case will not be considered as the settled law of the state; that owing to the importance of the questions involved the court will not now decide anything in regard thereto, but will hold them open for further investigation.  What was said in that case is not applied to this for the reason that it is now thought

to be the law in this state, settled or unsettled, but is so applied solely on account of the alleged substantial identity of the parties and of the subject matter in the two cases. By reason of such identity it is argued that what was said in the former had become the law of this case, or a matter *res adjudicata* as between the parties thereto. This makes it necessary that the principles underlying those questions which are technically termed "the law of the case," "*res adjudicata*," and "*stare decisis*," should be considered and their application pointed out.

As I understand these matters "the law of the case" is a rule of law announced by a court in the particular case under consideration. The question as to its application most frequently arises in a case which has been before an appellate court, and certain rules of law applicable thereto announced by that court and the cause remanded for a new trial. In such a case the law as laid down upon the first appeal will be held to be the law of the case on the second appeal, and will be adhered to by the court without any investigation as to whether or not the court is then satisfied with the law as so laid down. After a somewhat extended investigation I have been unable to find that the rule of "the law of the case" has ever been applied except as to questions thus decided. It may be possible that some courts have in some particular case applied the law established in one case in another not technically the same, but it will be found that it was substantially identical with the one in which the rule was laid down. That is said to be "*res adjudicata*" as between the parties to an action when it appears that a court of competent jurisdiction has passed upon it in a case where the parties and the facts were substantially the same. A question thus decided is conclusive upon the parties, and whether or not it was correctly ruled, they must abide by the decision. A legal principle is said to be "*stare decisis*" when it is so established by the rul-

ings of a court that it feels bound thereby and will not further investigate the question as to its correctness.

The line of distinction between these several principles is clear and distinct, and founded on reason and authority. That such is the fact will sufficiently appear from the cases cited in the foregoing opinion. They are so cited for the apparent purpose of showing that there is no such well defined distinction, and that what would come within the rule of *"stare decisis,"* as above defined, may be applied as "the law of the case" or as *"res adjudicata"* between the parties to the action. I am unable to gather any such doctrine from such cases. All excepting four may be grouped together, and the most careful reading of the entire group will fail to show that in any of them is any other question decided than that a rule of law laid down by a court in a particular case will be adhered to as the law of that identical case when it again comes before the court.

The four cases cited not included in the above group will now be considered. *Hammond's Lessee v. Inloes*, 4 Md. 138, refers entirely to the rule of *stare decisis*, and simply holds that when an appellate court has, upon careful consideration, announced a certain rule of law as applicable to a certain state of facts, it should adhere to that rule in another case presenting the same state of facts, unless it is satisfied that the decision is wrong. As I understand the facts of this case there was much better reason for the application of the rule of "the law of the case," or *res adjudicata*, than in the case at bar, but the court refused to found its decision upon either of these principles.

In the case of *Dugan v. Hollins*, 13 Md. 149, the court held that where it had once decided as to the force of a law with reference to the title to certain property, and the same law in reference to the same property was brought up for consideration upon the same question in another suit, the former decision would be adhered to, whether the

judgment be technically an estoppel or not, unless there is manifest error therein. It will be seen that in this case the court announced the doctrine that it would adhere to its former decision even where the parties were not identical unless it was satisfied that such decision was erroneous, but there is no intimation in the opinion that the court would hold the parties to that action bound by the decision should it be overruled in its application to other cases. It clearly appears from the opinion that the court refused to decide as to whether or not the former decision was rendered under such circumstances as to bind the parties in the case under consideration.

In *Hawley, Administrator, v. Smith, Administrator,* 45 Ind. 183, the court held a rule of law which had been announced in a former case to be binding upon the court in that one, whether or not said rule of law would, upon a further consideration, be found to be correct. But the facts of the case show clearly that in so holding it applied the rule of "*res adjudicata*" as above set out. The language of the court is as follows:

"It having been held in the former action between the same parties, on the same cause of action, that the relation of principal and agent existed, we should regard the question as *res adjudicata* between the parties. This should be the rule, even if we doubted the correctness of the ruling when applied to other cases."

The case of *Aurora City v. West,* 7 Wall. 82, only applies the rule of "*res adjudicata*" as between the parties to the action in relation to the same subject matter, but extends the doctrine to questions which might have been adjudicated in the former suit as well as to those which were actually so adjudicated. This extension can have no influence in deciding the case at bar, and was only the announcement of what had been held by many of the courts, though Justice MILLER, in his dissenting opinion, gives

reasons which, to me, are satisfactory why the rule should not be so extended.

These are all of the cases cited, and I can gather nothing therefrom that in any manner tends to extend the rule of "the law of the case," *res adjudicata* or *stare decisis*, so as to warrant their being in any manner intermingled, or applied to cases except as above stated.

I will now proceed to examine the decision in the case of *Wilkes v. Hunt*, 4 Wash. 100 (29 Pac. 830), as related to this case, and state my reasons for holding that, if the case at bar is to be at all affected by that decision, it must be because it is *stare decisis* in this court, and not for the reason that it is "the law of the case" or *res adjudicata* in any sense. That it is not the law of the case is too well established by the principles hereinbefore announced and by the cases bearing thereon cited by the majority to need further discussion. The case in which that decision was announced was in no sense this case. It was between different parties and related to an entirely different subject matter; for while, except for the reason to be hereinafter stated, there may be something in the facts which would justify the statement of the majority, that the ultimate object sought by the plaintiff in that case was the same as the ultimate object sought in this, yet the immediate objects of the suits were entirely different. In the former case the only object was to prevent a sale of the land being consummated as between the state and the purchaser at the sale. Under the complaint therein the court had no jurisdiction whatever to, in any manner, render a judgment in favor of the plaintiff for the value of his improvements, as appraised or to be appraised. The only thing which he sought was to have the hands of the officers of the land department stayed. There is no intimation in his complaint, or in any part of the proceedings, that he seeks any express relief as against the defendant in this action. It is

nowhere suggested that in the proceedings there should be an appraisement ordered, and, upon such appraisement being had, the purchaser at the sale adjudged to pay the amount thereof to the plaintiff. Nor does it in any manner appear therefrom that the injunctive relief is auxiliary to any other relief to which he may be entitled. While in the case at bar the only thing sought is to recover, in an action at law, the value of his improvements. If, in the former case, he had brought his action to recover for such improvements, and had, as auxiliary thereto, sought to stay the hands of the land department from completing the contract of sale, there would be some ground for the contention that the two suits were as to the same subject matter, but such was not the fact; and the assertion of the majority of the court, that the only object of the former suit was to secure the payment to the plaintiff for his improvements, is in no manner founded upon the records in that case, but entirely upon a loose statement in the brief of the plaintiff. It in no manner appears from said record that the plaintiff would have been satisfied to submit the question of the value of his improvements to a jury. The gravamen of his complaint is, that he was entitled to have them appraised under the statute, and that until they had been so appraised the sale should not be consummated.

In my opinion the subject matter of the two cases was in no legal sense the same, and for that reason the decision in the first case could not be *res adjudicata* in the latter one. But if it were, the parties were not so identical as to warrant the application of that rule. It is true that, so far as any pecuniary interest was concerned, the defendant in this action was the substantial party in the former one, but when we take into consideration the object of that suit and the parties at the hands of whom the relief was asked, and also consider the fact that the purchaser at the sale may have cared very little as to whether or not the officers

were allowed to consummate it by the execution of the contract, it should not be held that he was the principal person against whom the plaintiff was waging that suit. For aught that appears in that case, this defendant may have been entirely content to have had the court restrain the execution of said contract. It was nowhere intimated therein that he, or his agent who made the bid for him, had acted in the premises in any manner wrongfully. All the wrongful action alleged was on the part of the officers of the land department, and they were the substantial parties to that action, and the defendant in this action was but incidentally interested therein. Under these circumstances, the responsibility of defending the action should have been and probably was cast upon the officers of the land department, and for that reason, if for no other, this defendant should not be bound by the decision rendered therein.

There is another, and to my mind conclusive, reason why the former decision could not be relied upon here as having been an adjudication which established the rights of the parties to this action. Before that rule can be invoked the former decision must in some manner be brought into the case under consideration, and as the correctness of the ruling of the lower court must be determined upon the record as presented to it, and not by anything occurring in the case subsequent thereto, I am unable to see how its decision can in any manner be affected by the former one. The transcript of the record from the lower court will be searched in vain for anything that in the most remote manner calls the attention of that court to the fact that there had ever been such a decision made by any court as that now relied upon. As I understand the rule, a court will never, for the purpose of applying a principle of law as "*res adjudicata*" in a particular case, go outside of that case to ascertain what that principle is. If a rule of law has been so established by the courts of a state as to be

"*stare decisis*" therein, it must be given effect without being specially brought into the particular case, and this must be done as well when the parties and subject matter are entirely different as when they are identical with those of the case in which the rule was announced.

But I cannot understand how it can be held that in the trial of this case in the lower court it was bound to take notice that this principle of law had been adjudicated between the parties under such circumstances as to be binding upon them in this case, without the fact of such decision, or the circumstances under which it was rendered, having been in some manner brought to the attention of that court. The rule announced would require of a trial court, not only that it should bear in mind every principle of law theretofore announced by it, and every other court of competent jurisdiction, but also to take judicial notice of all the facts in every case, and at its peril, without its attention being in any manner called thereto, decide rightfully as to the identical parties in all of the cases and the entire subject matter which was or might have been adjudicated therein. That such could not be the rule seems clear to my mind. The utmost extent to which any of the cases go is to hold that where there has been no opportunity to plead the former adjudication, it may be given in evidence under the general issue. There is no intimation in any of such cases that where the plaintiff relies upon such adjudication as the foundation for his action he should not set it up in his complaint. If he does not have to thus set it up, then the court, when it rules as to the sufficiency of such complaint, must bring to its aid an adjudication in another case of which it has no notice whatever, or else have its decision reversed by having such adjudication suggested in the appellate court.

But even if it was held that it was not necessary for such prior adjudication to be set up in the pleadings, under the

circumstances of this case the plaintiff was not in a situation to take any advantage of such adjudication. After the intimation of the court that it thought the complaint on its face insufficient, he made no suggestion that its allegations were in any manner aided by matters not appearing therein. Not only was there no attempt in this manner to aid the complaint, but the plaintiff substantially told the lower court that he had no proof to offer upon that subject, as after the court had intimated that the complaint was insufficient, he stated to the court what he proposed to prove to establish the issues on his part, and in so doing made no reference whatever to any matter as "*res adjudicata*" between the parties.

The majority of the court have evidently seen the force of some of these suggestions, and have attempted to show that the parties here conceded that the question of *res adjudicata* was involved in the case. But even if the briefs of the parties do make such concession, that fact would not be sufficient to warrant this court in finding therefrom that the question was presented in the court below. And, unless it was so presented, this court should not allow it to influence the decision here. The transcript of the record shows clearly that nothing of the kind was relied upon in the lower court. Such being the fact, this court, if justified in acting upon any concession of counsel to the contrary, could only do so when the concession was made in such express and unmistakable terms that there could be no doubt of the intention. No suggestion by way of argument or anything of that kind should have the force of such express concession. As I understand the briefs, however, there is no claim, even on the part of appellant, that the question of *res adjudicata* was presented to the court below, or even that he relied upon it here. That there may be no misunderstanding as to the facts I here set out

the entire brief and argument of the appellant.    It was in words and figures following:

"The sole question before this court is the sufficiency of the complaint.

"It was contended by counsel for defendant, at the trial, that the plaintiff being in *possession* of the improvements, not having delivered them to defendant, he could not recover their value from defendant; also that plaintiff should have appealed to the state school land commission, on the refusal of the county commissioners to appraise the improvements.    The court, on its own motion, held that there having been no appraisement by the county commissioners, the sale was void and the defendant acquired no title, hence was not liable.

"This same controversy came before this court in the case of *Wilkes v. Hunt et al.*, 29 Pac. 830, in which the plaintiff sought to enjoin the execution and delivery of the contract of purchase of the lands in question, on the same theory which was adopted by the court below in this case, namely, that the failure of the county commissioners to appraise the improvements vitiated the sale.    As a matter of fact, Hunt attended the sale and was the purchaser, as shown by the memoranda of the sale; but he and defendant Davies, being members of the same syndicate, Davies was, under the peculiar and loose methods of the King county commissioners, substituted for Hunt in the contract of purchase; hence the suit against Davies as purchaser.

"In the case cited, this court says, *inter alia*, 'If there has been no compliance with the statute by the appraisement of his improvements, certainly no court would permit a purchaser, under those circumstances, to interfere with his possession of the land until he is compensated as the law requires.    The same doctrine is announced in *Pearson v. Ashley*, 31 Pac. 410.    Secondly, the purchaser is required to pay the appraised value to the owner of the improvements — that is, he is the debtor of the owner to that amount, and must pay it within thirty days.    He can be sued for the debt, *and if there has been no appraisement, the court and a jury can fix the reasonable value as well as the commissioners.'*

"Relying on this as an announcement from the highest authority, the plaintiff brought his suit. The superior court for King county reversed the decision of the supreme court and dismissed his case. Having lost his right to an injunction, by reason of the fact that he had a legal remedy, and having been denied a legal remedy because of his right to an injunction, he, although somewhat bewildered, confidently appeals to this court for an adjustment of his rights in the premises, and for a reversal of the decision of the court below."

It will be seen from an examination of such brief that, while it cites our former decision as an authority, it nowhere suggests that it was made under such circumstances as to make it conclusive of the rights of the parties in this action. The only expression in the most remote degree justifying the contention on the part of the majority is in the statement that the same controversy came before this court; but if counsel had intended to place any special reliance upon the decision by reason of the identity of the subject matter and of the parties, it would have been incumbent upon him to have at least shown by the title of the case that the present defendant was a party to that suit. It can only be gathered from all that is said by appellant, that he relied upon said decision for the reason that it had been announced by this court. But such reliance can only avail him in the event that the court still adheres to the decision as having been properly ruled. This the majority of the court expressly refuse to do. They in effect say that, if this question was presented in a case where the parties were different from those in which it was decided, we would not adhere to it but would proceed to investigate further.

From the brief of respondent it clearly appears that the idea that the former decision was relied upon as "*res adjudicata*" in this case was never in the mind of the one who drew it. The case of *Wilkes v. Hunt* is cited, but there

is nothing added to the citation to show that the parties were in any manner identical with those of the case at bar, or that the decision therein was relied upon as in any way concluding their rights. It was simply cited as a case in point, as any other case involving a like principle would have been. This not only appears from what has been already said, but it further appears from the fact that later in the brief the question of *res adjudicata* is expressly presented, and the claim made that when the board of county commissioners decided that there were no improvements of value upon the land, their decision was conclusive as to plaintiff's right to recover therefor.

What was said in the former case as to the right of plaintiff to recover the value of his improvements in an action at law was not an adjudication that could conclude the parties. That matter was not before the court. What the court was called upon to adjudicate in that case was as to whether or not the plaintiff was entitled to an injunction. There was nothing set up in the complaint or anywhere in the proceedings which could in any manner authorize an adjudication by the court as to any recovery for the value of said improvements. What was said in relation thereto was only the stating of a reason why the injunction should not be granted. Such reason may not have been a good one and yet the decision entirely correct. If, for any other reason founded upon the record, the injunction was properly refused, then the decision was right, even although one or a dozen faulty reasons were given therefor. The court was not called upon to say what was the remedy of the plaintiff. The most, under any circumstances, it could properly adjudicate was that he had a remedy, and it was not called upon to adjudicate that fact to warrant the decision made, if, regardless of the question of remedy, he was not entitled to the injunction.

There is another reason why what was said in that case

should not conclude the parties to this.   There is nothing to show that the improvements referred to in the two cases are the same.   In the first case it is alleged that the improvements are upon a certain forty acre tract, and there is no direct averment that any portion thereof are upon the particular twenty acres of said tract to which the complaint in this action is confined.

For the foregoing reasons I do not think that what was said in that case should be given any conclusive force in this one.   But if all that was so said is given full force, the contention of appellant is not aided.   It cannot be fairly deduced therefrom that the court intended to hold that the owner of improvements, without surrendering possession thereof to the purchaser at the sale, could maintain an action against him for the value of such improvements.   The most that can be claimed is that it was there held that the plaintiff had one of two remedies; he could remain in possession of his improvements until compensated therefor, or surrender the possession to the purchaser and maintain his action for their value.   I cannot believe that the court intended to hold that, by making a bid for school land and accepting a contract therefor, the purchaser becomes at once liable to one having improvements thereon for the value thereof, where there had been no appraisement by the board of county commissioners and nothing placed of record to show in any manner that there are any improvements on the land.   Such a construction would compel a purchaser of such lands to settle with the owner of the improvements upon whatever terms he should dictate or be put to the expense of a law suit, in which he was sure to have the costs of both parties to pay.   A brief consideration of the facts as applied to such ruling will show that such results must follow.

If, at the time plaintiff brought his action in this case, the defendant was liable for the value of such improve-

ments, he must have made himself so liable by making the bid or in accepting the contract from the state, for no other acts of his are alleged which could in any manner tend to establish such liability. It will follow, that one in possession of improvements would have a direct interest in not having them appraised by the board of county commissioners. If not so appraised he can get the value thereof at the time the land is sold, as found by a jury of his neighbors, and can have the beneficial enjoyment thereof while he is prosecuting his action for such value, and while, after the recovery of his judgment therein, the purchaser is waging his action of ejectment to obtain possession of the improvements for which a judgment has been theretofore rendered against him. Not only will he have the right to do this, but during the time of his beneficial enjoyment of the improvements he may make such use thereof as to absolutely destroy their value to one who afterwards comes into possession of the land.

When a construction will lead to such hardships to the purchaser and to the state, some other should be adopted if possible. As to the construction of the statute, it seems to me there can be little difference of opinion. This court has already announced, what is undoubtedly the law, that the one in possession of such improvements had, at the date of the passage of the act, no vested right to compensation therefor. Therefore the measure of his rights must be found in the statute, an investigation of which will show that it is only to have the improvements appraised by the board of county commissioners, and when appraised, to have the purchaser pay to him the value thereof as so appraised. There is nowhere in the act an intimation that he shall have any right to recover, or anybody shall be in any manner liable to him for the value of such improvements, excepting as so appraised. It must follow that, until there has been such an appraisal, there can be no foundation

for his recovery of anything on account of such improvements. He can assert no rights to such improvements or their value except in accordance with the provisions of the statute. The board of county commissioners will be presumed to have done their duty in that regard unless the contrary appears, and as they are charged with that duty and as he has no right to his improvements except-- ing such as grow out of their action in that regard, it is possible that he has no remedy when they refuse to make an appraisement thereof except an appeal to the board of state land commissioners. If he has any remedy aside from that, it can only be to have the board required to make such appraisement by proceedings in mandamus.

The majority of the court having expressly refused to say what the rights of the parties would be under the statute, I have a right to assume that if they did they would decide as above suggested. It must follow that, in their opinion, what was said by this court by way of argument in deciding a case in equity, where the only object sought was to stay the hands of certain officers, and to which this defendant was only an incidental party, was sufficient to create a liability on the part of the defendant, and a right in the plaintiff to enforce such liability, without any contract existing between them and without any authority of law whatever. I cannot consent that such results shall be held to flow from what was said in the former case.

In my opinion the judgment should be affirmed.